UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BENJAMIN CONOVER,

     Plaintiff,

v.                                 Case No. 3:17cv246-MCR-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Benjamin Conover's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed and the application for DIB denied.

## ISSUES ON REVIEW

Mr. Conover, who will be referred to as claimant, plaintiff, or by name, claims: (1) the Administrative Law Judge ("ALJ") failed to articulate "explicit and adequate" reasons for discrediting plaintiff's statements regarding the need to elevate his feet; and (2) the ALJ's reasons for discrediting plaintiff's complaints of pain and swelling in his legs are not based on substantial evidence. (Doc. 10).

## PROCEDURAL HISTORY

On March 25, 2014, plaintiff protectively filed an application for DIB, claiming disability beginning December 16, 2013, due to lymphedema and depression. T. 87.[1] The Commissioner denied the application initially and on reconsideration. T. 97, 108. After a hearing on March 23, 2016, the ALJ found claimant not disabled under the Act. T. 21-31, 36-85. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The Commissioner's determination is now before the court for review.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v.*

---

[1] The administrative record filed by the Commissioner consists of 7 volumes (docs. 7-2 through 7-8) and has 391 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

*Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to

a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period

of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[2]

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, he is not disabled.

## FINDINGS OF THE ALJ

In the written decision, the ALJ made several findings relative to the issues raised in this appeal:

•     Claimant has the following severe impairments: lymphedema, hypertension, and morbid obesity.  T. 23.

•     Claimant has the RFC to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b).  He can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  He can sit for up to 6 hours in an 8-hour day and stand/walk in combination for up to 6 hours in an 8-hour day with customary

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

breaks.  After 90 minutes of sitting, he would need to momentarily change positions before resuming a seated position.  He cannot push/pull leg controls and cannot climb ladders, ropes, scaffolds, or stairs.  He should not crouch, kneel, crawl, or squat.  He should avoid working in extreme heat or at unprotected heights.  He should not operate hazardous moving equipment.  T. 25.

• Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 29.

• Claimant has not been under a disability, as defined in the Act, from December 16, 2013, through May 13, 2016.  T. 30.

## FACT BACKGROUND AND MEDICAL HISTORY

Mr. Conover testified as to his health, daily activities, and work history at the March 2016 hearing before the ALJ.  T. 36-85.  Born on November 10, 1988, he is 5.5 feet tall and weighs about 400 pounds.  T. 40, 42, 54.  He has a high school diploma and previously worked as a truck driver.  T. 42-43.  He lives with a roommate in Burlington, North Carolina.  T. 41.  He drove from Burlington to Florida for the hearing; the trip took 15 hours because he "had to take substantial breaks."  T. 41-42.

According to his testimony, plaintiff can no longer work due to lymphedema, which causes "swelling in the legs and lymph nodes," and "moderate to severe pain."

T. 47.  He can stand for 30 minutes before needing to sit down, and sit for "an hour or an hour and a half until the pain starts to build up enough that [he has] to get up and move around."  T. 47, 60.  Lasix helps relieve the swelling and pain in his legs, but it "normally" causes him to use the restroom "every hour to hour 15 minutes." T. 47-48.  In addition, Mr. Conover uses a "sequential compression device" on his legs for one hour two times a day.  T. 48-49.  The device "helps with the swelling, but it is very painful because the tissue underneath the skin is very sensitive to pressure."  T. 49.  He admitted he "should wear compression stockings," but the ones he has are "worn out" and "no longer of adequate use."  T. 48.

On a typical day, claimant wakes up between 7:30 and 9:00 a.m., makes a simple breakfast, then sits with his feet elevated for a few hours and uses the sequential compression device.  T. 62.  In the afternoon, he babysits two children for an hour and a half about three days a week.  T. 44-45, 63.  If he is not babysitting, he "take[s] care of a few light things around the house" such as cleaning, dusting, washing dishes, and caring for his two cats.  T. 62-63.  In the evening, he makes a simple dinner and uses the sequential compression device.  T. 63.

Mr. Conover is capable of shopping but he "generally" has "to use the riding cart."  T. 63.  He uses a cane for walking and "need[s] it more days than not."  T. 67. He enjoys watching television shows, and playing a game on his cell phone.  T. 64.

To play the game, he "go[es] out in the real world using [a] phone at [certain locations] to interact with the virtual objects [on the] screen."  T. 64.

Medical records show plaintiff visited a Sacred Heart Medical Group Primary Care Clinic in Pensacola, Florida, on January 3, 2014, with complaints of hypertension, painful swelling in both legs, and worsening edema.  T. 309. Examination revealed "4+ pitting edema [bilaterally], tenderness to the lower extremities – [negative] homans sign, some erythema and pigmentation to [bilateral lower extremities]."  T. 311.  James Gahagan, D.O., discussed treatment for "lymphedema and dependent edema," and ordered a venous ultrasound of the lower extremities.  T. 309, 312.  On January 10, Mr. Conover returned to follow-up on the ultrasound; it showed lymphedema and enlarged lymph nodes.  T. 313.  Dr. Gahagan's examination revealed "4+ nonpitting edema"; he prescribed Lasix and referred plaintiff to a lymphedema clinic.  T. 313, 315.

Claimant presented to Sacred Heart's Rehabilitation Center on January 20, 2014, and reported progressive edema in the lower extremities accompanied by intermittent ankle pain.  T. 376.  He stated he occasionally used a cane, and had difficulty donning socks and shoes.  T. 376.  Inspection of the lower extremities showed pitting, firm edema.  T.  376.  An occupational therapist measured the circumference of plaintiff's lower extremities at various points and "applied graded short stretch compression" bandages to his legs.  T. 376.  Claimant returned to the

Rehabilitation Center on January 23.  T. 377.  A therapist removed the compression bandages, measured Mr. Conover's legs, then reapplied the bandages.  T. 377.  The therapist noted the "measurements decreased since starting compression therapy." T. 377.  Plaintiff also visited the Primary Care Clinic on January 23, where he reported "minimal pain" and "improvement with compression wrapping done by" the Rehabilitation Center.  T. 316.

Claimant returned to the Rehabilitation Center on January 30, and a therapist again changed his bandages and measured his legs.  T. 379.  The therapist observed "good progress [reducing the] edema," but "still need to get calf area down more." T. 379.  Mr. Conover continued the compression bandage therapy and the twice-a-week visits to the Rehabilitation Center in February 2014.  T. 380-84.  On February 6, a therapist noted "good progress" and "[patient] has been very good applying extra 12 cm bandage [to] upper calf . . . when bandages slide."  T. 381.  On February 10, the therapist stated the "measurements have now started to plateau."  T. 382. Plaintiff reported experiencing no pain on February 17, and the therapist noted his "legs look really great [and are within normal limits.]"  T. 383.

Plaintiff transitioned from the compression bandages to compression stockings on February 24, 2014.  T. 385.  A therapist at the Rehabilitation Center provided "training on donning/doffing techniques for stockings."  T. 385.  Claimant reported the "stockings feel good on his legs."  T. 385.  The next day, Mr. Conover

visited the Primary Care Clinic.  T. 320.  He reported "fluid improved with compression stockings x one day."  T. 320.  An examination of the lower extremities revealed "3+ edema – improved."  T. 322.  Dr. Gahagan instructed plaintiff to continue his lymphedema treatment and referred him to Sacred Heart's Weight Management Center.  T. 320, 323.  When claimant returned to the Rehabilitation Center on February 27, he reported "the stockings are fine – a little difficult to don." T. 386.  A therapist observed the "stockings seem to be maintaining edema reduction well."  T. 386.

Plaintiff visited the Weight Management Center on March 13, 2014, and described a history of depression, headaches, fatigue, edema, and joint pain that limited his ability to exercise.  T. 295.  He stated he walked for exercise and denied having trouble walking unassisted.  T. 295-96.  An "examination of [the] extremities for edema and/or varicosities" was "normal."  T. 298.  Likewise, "inspection/palpation of joints, bones, and muscles" was "normal."  T. 298. Anthony Huynh, D.O., recommended: (1) "a carbohydrate-modified, low fat, high protein, 1500-1800 [calorie] meal plan"; (2) reducing starch intake to 3-4 servings a day; (3) reducing salt and sodium intake to 2 grams a day; (4) drinking 64 ounces of water before any other drink; and (5) reducing alcohol intake.  T. 299.  Dr. Huynh also instructed plaintiff to exercise for 10 minutes, 3 times a day as tolerated.  T. 299.

On March 19, 2014, plaintiff was discharged from the care of the Rehabilitation Center.  T. 388.  Records indicate claimant received a compression pump for home use, but his knee and ankle joints hurt more after using the pump.  T. 388, 391.  A therapist noted plaintiff had been wearing his compression stockings "and they seem to be managing [the swelling]."  T. 388.  To keep the edema down, the therapist instructed Mr. Conover to use the compression pump and wear the compression stockings every day.  T. 388.

Plaintiff continued to receive treatment at the Primary Care Clinic.  On March 25, 2014, examination again showed "3+ edema."  T. 326.  Dr. Gahagan, however, noted the "lymphedema [was] progressing well" and plaintiff should "continue weight loss."  T. 327.

On April 4, 2014, Larry Goins—plaintiff's stepfather—completed questionnaires regarding plaintiff's activities and functional limitations.  T. 232-42.  Mr. Goins stated he had known Mr. Conover for 12 years and they watched 2 hours of television a day together.  T. 232.  Due to lymphedema, Mr. Goins asserted:

> [Claimant] was truck driver and can no longer drive without severe consequences to legs and feet.  The pain he endures whenever walking or standing would make normal jobs impossible.  He is in constant throbbing pain and often severe sharp pain.  He must constantly adjust position of legs and feet to keep circulation.

T. 232.  When asked to describe plaintiff's hobbies and interests, Goins reported plaintiff watched television and played video games for several hours a day.  T. 236.

In addition, Mr. Goins stated that after claimant "pumps his legs he can barely walk; legs and feet especially become very painful. He loses at least 4 hours a day to therapy—feet are visibly red and sore." T. 242. Mr. Goins also indicated plaintiff's impairments affected his ability to squat, bend, stand, walk, sit, kneel, and climb stairs. T. 237.

Plaintiff returned to the Weight Management Center on April 14, 2014. T. 345. Dr. Huynh noted plaintiff had lost 13 pounds and "his leg edema is better." T. 345. Claimant reported suffering knee and ankle pain that was exacerbated by standing, sitting, and walking. T. 347. The pain, however, rated only a 3 on a scale of 0 to 10. T. 347. On May 12, 2014, Dr. Huynh noted the "leg edema was a bit worse," but plaintiff did not report experiencing pain. T. 340, 342. Claimant also said he was exercising 2 to 3 times a week. T. 340.

As part of the disability application process, Gloria Hankins, M.D., reviewed plaintiff's medical records and offered an opinion as to the limiting effects of his physical impairments on June 28, 2014. T. 103-05. Based on medical records from 2014, Dr. Hankins concluded Mr. Conover could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. T. 104-05.

After Mr. Conover moved to North Carolina, he sought treatment at the Burlington Community Health Center ("BCHC") for hypertension and lymphedema.

T. 367.  On January 14, 2015, he complained of knee pain.  T. 367.  Adrian Mancheno, M.D., indicated claimant needed a "referral to vascular and [physical therapy] for management and treatment" of lymphedema.  T. 370.  On visits to the BCHC on February 6 and March 23 of 2015, Mr. Conover continued to complain about knee pain.  T. 356, 362.  A physical examination on February 6, however, revealed only trace pedal edema bilaterally in the lower extremities.  T. 363.  On June 15, 2015, plaintiff's chief complaint was right foot and ankle pain.  T. 372.  Dr. Mancheno noted an increase in the size of claimant's lower extremities because he had stopped taking Laxis.  T. 372.  Again, however, a physical examination showed only trace pedal edema.  T. 373.

## ANALYSIS

Mr. Conover alleges he is disabled due to pain stemming from his lymphedema.  "Pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (*citing Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)).  The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his . . . own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence

for determining residual functional capacity.") (*citing* SSR 96-8p).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "The standard also applies to complaints of subjective conditions other than pain." *Id.* (*citing Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir. 1989)).  "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  And of course, the reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ found "claimant's medically determinable impairments could reasonably be expected to cause some alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" T. 26.  Plaintiff, however, claims the ALJ failed to articulate explicit and adequate

reasons for discrediting plaintiff's statements regarding his pain and other symptoms.

The ALJ cited multiple reasons for finding plaintiff not credible, and those reasons are supported by substantial evidence. First, the ALJ observed the treatment records did not support plaintiff's subjective complaints of disabling pain. The ALJ correctly noted records from Sacred Heart's Rehabilitation Center and Primary Care Clinic showed claimant's lymphedema symptoms improved with compression therapy. T. 27-28, 30, 316-327, 375-88. The 2015 physical examinations in North Carolina revealed only trace pedal edema bilaterally. T. 363, 373. At the hearing, plaintiff admitted the sequential compression device, Lasix, and compression stockings improved the swelling in his legs, though he claimed the "pain symptoms" had increased. T. 68. Contrary to claimant's hearing testimony, however, the records from the Weight Management Center and the Rehabilitation Center consistently show plaintiff reported experiencing no or minimal pain. T. 342, 347, 375-88. In addition, the ALJ noted the "clinical exams do not reflect any reduction in strength or limitations in range of motion from [the] lymphedema." T. 28. The medical records, therefore, support the ALJ's determination that plaintiff's allegations are not entirely credible. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect

those symptoms, such as pain, may have on your ability to work."); *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 814 (11th Cir. 2017) (holding "substantial evidence supports the ALJ's determination that Lara's statements about her symptoms were not credible because those statements were inconsistent with the medical evidence in this case and because she had given inconsistent statements throughout the record").

The ALJ also based the credibility determination on the inconsistency between Mr. Conover's subjective complaints and his activities of daily living.  T. 28 ("[C]laimant's daily activities, although restricted, support . . . claimant's residual functional capacity assessment.").  Although "participation in everyday activities of short duration, such as housework or fishing" does not necessarily disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), the ALJ may consider the activities when making the credibility determination.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain.").

Despite allegedly disabling pain, the ALJ noted Mr. Conover could walk without an assistive device, perform chores, drive, and, for the most part, maintain

his personal care without assistance.[3]  T. 28, 223-26.  Of note, plaintiff testified that he drove 15 hours from Burlington, North Carolina, to Pensacola, Florida, though he "had to take substantial breaks" and his legs were sore for multiple days afterwards.  T. 41-42, 68-69.  He also testified that 3 times a week, he drove 25 minutes to a friend's house to babysit for an hour and a half; occasionally, claimant stayed when his friend returned to socialize.  T. 44-45, 62-63.  On days he does not babysit, plaintiff said he takes "care of a few light things around the house" such as cleaning, dusting, washing dishes, and caring for his two cats.  T. 62-63.  Mr. Conover's ability to perform these activities supports the ALJ's credibility determination.

The ALJ also relied on the opinion of Dr. Hankins, the state agency medical consultant, to discount claimant's allegations and formulate the RFC.  T. 27.  On June 28, 2014, Dr. Hankins concluded Mr. Conover could perform medium work with some additional restrictions.  T. 103-05.  Recognizing that Dr. Hankins did not have access to all the medical records received at the hearing level, the ALJ assigned the opinion partial weight.  T. 27.  Nevertheless, Dr. Hankins' conclusions support the ALJ's finding that plaintiff's allegations of disability were not entirely credible.

---

[3] At the hearing, plaintiff testified that he took a cane with him whenever he left the house and he "need[ed] it more days than not."  T. 67.  The ALJ accurately noted, however, that "[t]here is no prescription for [a] cane in the record, nor has any physician indicated that [claimant] requires one for ambulation."  T. 28.

*See* 20 C.F.R. § 404.1513a(b)(1) ("State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation.").

Finally, the ALJ accurately observed that none of Mr. Conover's treating physicians "opined that he is incapable of working or even recommended any significant restrictions on work-related activities." T. 28. For example, plaintiff's most recent treating physician, Dr. Mancheno, encouraged plaintiff to "[d]o moderate intensity exercise, for example brisk walking for 20 to 60 minutes at least three to four days per week." T. 265. The absence of medical opinions suggesting claimant could not meet the physical demands of the ALJ-formulated RFC lends further support to the credibility determination. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.") (citations omitted).

 Mr. Conover contests several aspects of the ALJ's credibility analysis. First, claimant suggests the ALJ failed to take account of his need to elevate his legs. *See* (Doc. 10, p. 22) (The ALJ "never explain[ed], with reference to any specific evidence in the record, what she relie[d] on to discredit [claimant's] statements related to the pain he experiences and the need to elevate his legs."). At the hearing, however, Mr. Conover specifically testified that he could sit without elevating his legs "for possibly an hour or an hour and a half until the pain starts to build up

enough that [he'd] have to get up and move around." T. 60-61. This testimony is consistent with the ALJ-formulated RFC, which provided that "[a]fter 90 minutes of sitting, [claimant] would need to momentarily change positions before resuming a seated position."[4] T. 25.

Next, plaintiff asserts the ALJ made two erroneous statements to discredit his credibility: (1) "The claimant maintains that the two one-hour compression sessions would prevent him from working; however, there is no evidence in the file indicating that these sessions could not be performed before and after work."; and (2) "[Claimant] can drive short distances and maintain sufficient attention and concentration for [playing] video games for several hours per day." T. 28.

Plaintiff says "[t]here is simply no contention made by Mr. Conover that he is disabled from work due solely to the fact that he must use his sequential compression device," and "[a]ny such statement is a vast misstatement of the record and cannot be called 'substantial evidence.'" (Doc. 10, p. 25). Claimant's argument is meritless. The ALJ did not believe plaintiff's disability claim was based "solely" on the use of the compression device; the ALJ accurately described the various

_____

[4] Plaintiff relies on *Jones v. Astrue*, No. CA 09-0622-C, 2010 WL 1658738 (S.D. Ala. Apr. 22, 2010), to argue the ALJ failed to properly evaluate the postural limitations caused by lymphedema. *Jones*, however, is distinguishable from the present case. In *Jones*, the ALJ incorrectly believed the claimant attended college night classes and was the care giver for a small child. In addition, the consultative physician the ALJ relied on noted the claimant had to elevate her legs. In contrast, the ALJ deciding Mr. Conover's case did not inaccurately describe his activities of daily living or overlook statements from a physician about the need for leg elevation.

symptoms and limitations plaintiff allegedly experienced. *See, e.g.,* T. 26 ("[Plaintiff] testified that he has not worked since 2013 due to pain from his swollen lymph nodes. He alleges that he must change positions frequently and cannot sit or stand for prolonged periods."). As discussed above, the ALJ provided reasons— supported by substantial evidence—for rejecting claimant's complaints of disabling pain. Mr. Conover has not established the ALJ's statement regarding the compression device constituted reversible error.

Plaintiff also takes issue with the ALJ's assertion that plaintiff can "maintain sufficient attention and concentration for play[ing] video games for several hours per day." T. 28. In a third-party questionnaire, Mr. Goins—plaintiff's stepfather— identified plaintiff's hobbies as watching television and playing video games. T. 236. In response to the question "[h]ow often and how well does [claimant] do these things," Mr. Goins responded, "several hours [a] day." T. 236. When asked to describe any changes in these activities since claimant's condition began, Mr. Goins wrote, "spends a lot more time watching TV[,] doesn't move around a lot." T. 236. Mr. Conover says "the ALJ . . . ignored Mr. Goins' responses related to watching television, and focused only on the fact that Mr. Conover was said to play video games for recreation." (Doc. 10, p. 26). Thus, plaintiff argues the finding that he can play video games for several hours per day is not supported by substantial evidence.

The statements from Mr. Goins are ambiguous with respect to the amount of time plaintiff spent watching television as opposed to playing video games. Nevertheless, plaintiff identified video games as one of his hobbies.  T. 226.  He also testified that he played a cell phone game that required him to travel to different locations but he "tend[ed] to normally only go out for, at most, an hour doing that at a time."  T. 64.

Based on the standard for reviewing factual findings, the ALJ did not err by concluding plaintiff played video games for several hours a day.  *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)); *Bloodsworth*, 703 F.2d at 1239 ("Substantial evidence is more than a scintilla, but less than a preponderance.").  A critique of a fact conclusion, even a good critique, does not equate with a lack of substantial evidence to support such a conclusion.

In sum, substantial evidence supports the ALJ's conclusion that Mr. Conover's statements about the intensity, persistence, and limiting effects of his symptoms were not credible.  Both the medical evidence and claimant's activities of daily living support the ALJ's credibility finding.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the]

ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Accordingly, it is respectfully RECOMMENDED:

1.     That the decision of the Commissioner be AFFIRMED and plaintiff's application for Disability Insurance Benefits be DENIED.

2.     That the clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 20th day of April, 2018.


*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.